STATE OF INDIANA )                          IN THE LAKE _____ COURT
                 ) SS:
COUNTY OF LAKE   )                          SITTING AT _____, INDIANA

DALE KRASINSKI, TERESA KRASINSKI,   )
and ELEANOR KRASINSKI b/n/f DALE    )
KRASINSKI,                          )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )      Cause No.: 45D02 1508 PL 00 0 6 5
                                    )
SCOTTSDALE INSURANCE CO.,           )
DWAYNE RANCIFER, and RANCIFERS      )
INVESTMENTS, LLC a/k/a RANCIFER     )
INVESTMENTS, LLC,                   )
                                    )
          Defendants.               )

**Filed in Clerk's Office**

**JUL 3 1 2016**

CLERK LAKE CIRCUIT COURT

<u>COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF AGAINST DEFENDANT
SCOTTSDALE INSURANCE COMPANY (Damages and Declaratory relief) AND
AGAINST DEFENDANTS DWAYNE RANCIFER AND RANCIFERS INVESTMENTS,
LLC (as to Declaratory Judgment only)</u>

COME NOW the plaintiffs, Dale, Teresa and Eleanor Krasinski b/n/f Dale and

Teresa Krasinski, by their attorneys Kevin Smith and Steve Sersic of Smith Sersic, and for

their Complaint for Damages and Declaratory Relief against Defendant Scottsdale

Insurance Company (Damages and Declaratory Relief), and against Defendants Dwayne

Rancifer and Rancifers Investments, LLC (as to Declaratory Judgment only), allege and

state as follows:

PARTIES

1. Plaintiffs Dale, Teresa and Eleanor Krasinski, are father, mother and daughter, all

of whom are residents of Crown Point, Lake County, Indiana. Eleanor brings suit

individually and b/n/f Dale and Teresa Krasinski. They are at times herein referred to as

the "Krasinskis."

1

2.  Defendant Scottsdale Insurance Company, a wholly owned subsidiary of Nationwide Insurance Company, an Ohio corporation, is a foreign corporation headquartered in Arizona.

3.  Defendant Dwayne Rancifer is and was at all relevant times a resident of Lake County, Indiana.

4.  Rancifers Investments, LLC, a/k/a and d/b/a Rancifer Investments (hereinafter referred to as "Rancifers Investments, LLC") is an Indiana limited Liability Company.

5.  Dwayne Rancifer and Rancifers Investments, LLC, when referred to together, shall hereinafter be referred to as "The Rancifer Defendants".

KRASINSKIS' ORIGINAL CAUSE OF ACTION AGAINST THE RANCIFER
DEFENDANTS: THE RANCIFER DEFENDANTS' NEGLIGENCE

6.  The "Joint Agreed Proposed Findings of Fact, Conclusions of Law and Judgment" entered into in the case of Dale Krasinski, Teresa Krasinski, and Eleanor Krasinski b/n/f Dale Krasinski, Lake Superior Court, Room No. 7, Cause No.: 45D11-1108-PL-00078 are hereby incorporated by reference as if fully set out herein. See, "Joint Agreed Proposed Findings et. al.," Exhibit "A."

7.  Defendant Dwayne Rancifer is, and was at all times relevant to Plaintiffs' Complaint, the principal officer, member or manager of defendant Rancifers Investments, LLC a/k/a Rancifer Investments, LLC.

8.  Rancifer Defendants operate a local property preservation company that was hired by Extreme Property Solutions, LLC, a Midwest regional property preservation company, that was hired by MSI, a national property preservation company, which was hired by mortgage companies to service foreclosed properties, such as the Krasinskis' was in February 2011.

9.  In or around 2003, Teresa and Dale Krasinski purchased real property, located at

2

8805 Morse Place, Crown Point, Indiana 46307.

10. On October 24, 2006, Plaintiffs entered into a mortgage agreement whereby Litton Loan Servicing, LP (hereinafter "Litton Loan"), would finance the purchase of 8805 Morse in exchange for their repayment of the loan with interest.

11. Litton subsequently foreclosed on the property.

12. Litton and/or their successors in interest, and/or Litton's property management contractors Extreme Property Solutions, LLC and MSI, contracted the Rancifer Defendants to provide foreclosure cleanup operations and/or property preservation services at 8805 Morse.

13. On or about February 22, 2011, the Rancifer Defendants negligently entered the Krasinskis' property at 8805 Morse and further were negligent in their conduct of clean-up operations and preservation services at 8805 Morse.

14. At the time the Rancifer Defendants entered 8805 Morse, the Kraskinskis still held actual title to 8805 Morse, and noticeable "For Sale" signs were placed in conspicuous locations on that property. Accordingly, the Rancifer Defendants were negligent in failing to conduct a basic inquiry and determine whether entry and performance of cleanup operations and property preservation services were even called for, necessary or appropriate at 8805 Morse.

15. Once they did enter the property, the Rancifer Defendants were negligent in discharge of their foreclosure and clean-up operations at 8805 Morse.

16. Said negligent discharge of their foreclosure cleanup operations and preservation services at 8805 Morse included but were not limited to:

      a.  Negligently causing or allowing the doors to be kicked in;

      b.  Negligently causing or allowing the house and the surrounding property to become damaged;

3

    c. Negligently failing to take reasonable precautions to safeguard the loss of personal property;

    d. Negligently allowing personal property in the house and on the property to be left in a state of complete disarray, which it had not been previously;

    e. Negligently allowing significant damage to the house;

    f. Negligently causing the basement to flood; and

    g. Otherwise negligently conducting themselves.

17. The immediate aftermath and results of the Rancifer Defendants' negligence are detailed in Exhibit A hereto.

18. Said immediate aftermath and results included but were not limited to: damage to the property, stench, water in the basement, condensation on the windows, mildew, mold, water throughout the house, scattered cigarettes, and dirty carpet.

## KRASINSKIS ORIGINAL CAUSE OF ACTION AGAINST THE RANCIFER DEFENDANTS: KRASINSKIS DAMAGES

19. Subsequent to February 22, 2011, Dale and Teresa were unable to sell the house because of the filthy, flooded, molded and otherwise damaged condition of the home.

20. Although the Rancifer Defendants' negligence occurred on or around February 22, 2011, it took Dale all of the summer of 2011 and beyond to make repairs to the house and clean it so that the house was in a minimally salable condition.

21. By that time putting their house on the market was no longer feasible as the delay in sale created by the Rancifer Defendants foreclosed Dale and Teresa's window of opportunity to sell the house before negotiations with Litton disintegrated in late summer, 2011 making sale or negotiation no longer feasible and requiring litigation to resolve the Krasinski's disputes with Litton Loan.

22. The negligence of the Rancifer Defendants caused a breakdown in the relations

4

between Litton and Krasinskis and caused a three and a half year delay in the Krasinskis' ability to repair their credit.

23. As a result, Dale and Teresa Krasinski underwent a 3 and a half year delay of their ability to rehabilitate their credit and so continue to have credit issues today because of the negligence of the Rancifer Defendants.

24. As a consequence of the negligence of the Rancifer Defendants, Dale and Teresa had to

retain the law firm of Smith Sersic and currently owe legal fees and expenses.

25. As a consequence of the negligence of the Rancifer Defendants, Dale and Teresa sustained property losses because of property that was either damaged or lost due to said negligence.

26. As a consequence of the negligence of the Rancifer Defendants, Dale and Teresa sustained damage to their reputation in the community because of their ruined credit and inaccurate portrayal as bad debtors or deadbeats due to the financial hardship created by the Rancifer Defendants' negligence.

27. Moreover, Dale and Teresa Krasinski's relationship sustained strain and damage because of the additional financial pressures created by the Rancifer Defendants' negligence.

28. Subsequent to February 22, 2011, Teresa began to have physical symptoms such as dizziness, lightheadedness, heart palpitation, and irregular heartbeat, which escalated to such a point that she sought clinical attention with her physician Dr. Alan Jones.

29. Dr. Jones concluded that Teresa's symptoms were substantially caused and contributed to by the physiological stress to her body and heart due to the Rancifer Defendants' actions.

30. Accordingly, per Dr. Jones, Teresa's above symptoms, her treatment including the

installation of the pacemaker and the future need for battery replacement surgery, and other adverse medical consequences, were proximately caused by the physiological stress to Teresa's body resulting from the negligence of the Rancifer Defendants.

31. Teresa's pacemaker and condition have caused her to curtail her activities with her daughter as a mom.

32. They have also caused strain upon her relationship with Dale, anxiety and anguish over her past and present condition, as well as anxiety and anguish over the further need for a battery replacement surgery and her pacemaker.

33. Teresa now has disability license plates as a proximate result of her pacemaker and condition.

34. Teresa's daughter, Eleanor, has suffered the loss of her mother's services and worries about her mom's health and pacemaker.

35. As a result of the negligence of the Rancifer Defendants, Teresa sustained emotional damage and pain, personal injury and emotional distress, loss of enjoyment of life, strain on her relationship with her daughter and husband, loss of personal property, and loss of reputation.

36. As a result of the negligence of the Rancifer Defendants, Dale sustained financial damage and ruin, ruin of reputation, lost services, relationship strain, loss of personal property and other general damage.

37. As a result of the negligence of the Rancifer Defendants, Eleanor sustained loss of her mother's services, the ruin of the reputation of her family, strain on her family relationship and other general damages.

### SCOTTSDALE INSURANCE'S COMPLETE AND UTTER FAILURE TO DEFEND THE INTERFESTS OF THE RANCIFER DEFENDANTS, ITS INSUREDS

38. At all times relevant hereto the Rancifer Defendants maintained a commercial

general liability policy, number CPS 1212925 ("policy") issued by Defendant Scottsdale Insurance Company ("Scottsdale") to the Rancifer Defendants.

39. The policy was in effect and applicable to claims made by Krasinskis against the Rancifer Defendants.

40. Upon information and belief, said policy provided that Defendant Scottsdale Insurance Company had (1) a contractual duty to defend the Rancifer Defendants and (2) to indemnify the Rancifer Defendants up to and including the limits of the applicable policy for any judgment arising from negligence of the kind alleged and proven by Krasinskis against the Rancifer Defendants.

41. That said contractual duties and the relative positions of the parties and their relative knowledge and sophistication in legal and insurance matters gave rise to a duty on the part of Defendant Scottsdale to exercise due care in defense and adjustment of claims against the Rancifer Defendants.

42. That said contractual duties and the relative positions of the parties and their relative knowledge and sophistication gave rise to a duty on the part of Defendant Scottsdale to act in good faith in the defense and/or indemnification of the Rancifer Defendants.

43. That on February 19, 2013, Krasinskis instituted legal proceedings in Lake County Superior Court against Rancifer Defendants relative to the above-detailed acts and allegations of the same.

44. The Rancifer Defendants received proper service of the lawsuit and timely tendered a copy of the Summons and Complaint to Defendant Scottsdale.

45. Defendant Scottsdale failed to timely respond to Plaintiff Krasinskis' notices and communications regarding the litigation that was pending including the dates of depositions, court hearings and the fact that a default has been filed against its insured.

7

46. Plaintiffs' counsel's enclosure letters specifically directed that Defendant Scottsdale's representative forward the matter to Defendant Scottsdale's assigned defense counsel. Plaintiffs' counsel also notified Scottsdale repeatedly of the litigation and important litigation events.

47. The Rancifer Defendants, having provided the required notices to Defendant Scottsdale, and having no sophistication or expertise in insurance and legal matters, relied exclusively upon their belief that Defendant Scottsdale would act in their best interest, through its adjusters, other representatives and / or appointed counsel, to manage their defense in Lake Superior Court Cause No: 45D11-1108-PL-00078.

48. Unbeknownst to Rancifer Defendants, Defendant Scottsdale utterly and repeatedly and continually failed to take any action whatsoever to defend the Rancifer Defendants.

49. Unbeknownst to Rancifer Defendants, Defendant Scottsdale, although it had ample notice of the need to defend, failed to have an attorney appear to defend, failed to have an Answer filed to Plaintiff's Complaint, and failed to take any action whatsoever to defend Defendant Rancifers' interests.

50. As a result of Defendant Scottdale's failures as detailed above, the Court entered an Order of Default Judgment on October 9, 2014.

51. The default was properly entered and there never was any meritorious basis for vacating same.

52. The Court set the matter for a hearing on damages for November 24, 2014.

53. Defendant Scottsdale failed to secure counsel to defend the issue of damages even though it knew of or should have known of the hearing.

54. On November 24, 2014, Judge Diane Kavidias-Schneider of the Lake Superior Court conducted a hearing on damages in the Lake Superior Court No. 7 in Krasinski Et. Al. v. Dwayne Rancifer, Et. Al, Cause No. 45D11-1108-PL-00078.

55. The Court heard testimony from Dale Krasinski, Teresa Krasinski, and received medical records and the Affidavit of Dr. Alan Jones, Teresa's physician, on the subject of the Krasinski's damages.

56. Subsequent to the hearing, on February 17, 2015, the Krasinskis and the Rancifer Defendants tendered the "Joint Agreed Proposed Findings of Fact, Conclusions of Law and Judgment", attached as Exhibit A hereto.

57. On February 25, the Court entered an "Order of Judgment" as follows:

   1. Judgment is entered in favor of the Plaintiff Teresa Krasinski and against the Rancifer Defendants, jointly and severally, the amount of $3,000,000.00 (Three Million Dollars).

   2. Judgment is entered in favor of Plaintiff Dale Krasinski and against the Rancifer Defendants, jointly and severally, in the amount of $1,000,000.00 (One Million Dollars).

   3. Judgment is entered in favor of the plaintiff Eleanor Krasinski and against the Rancifer Defendant, and each of them, in the amount of $1,000,000.00 (One Million Dollars).

   The Court further finds there is no just reason for delay and hereby enters the Findings, Conclusions and Judgment as a final appealable order pursuant to Indiana Trial Rule 60(B).

58. The Rancifer Defendants have assigned their rights and causes of action against Defendant Scottsdale to the Krasinskis.

## COUNT I-DECLARATORY JUDGMENT AND RELIEF

59. Plaintiff restates and incorporates by reference Paragraph 1 through 58 as if fully set forth herein.

60. The Rancifer Defendants were at all times relevant to Plaintiff Krasinskis

9

Complaint entitled to contractual rights under Scottsdale commercial general liability policy number CPS1212925, contractual rights for which the Rancifer Defendants had given Defendant Scottsdale good and valuable consideration.

61. The Rancifer Defendants contractual rights as vested in them by policy number CPS1212925 included the right to be properly serviced as policyholders/customer of Defendant Scottsdale by properly trained, experienced, and licensed counsel, the right to be reasonably informed of the status of the work on the claims against them, and of any and all reservations of rights, the right to be protected from exposure to preventable risks of the litigation process, and the right to be indemnified for financial exposure to claims such as those presented by the plaintiff Krasinskis in Cause No. 45D11-1108-PL-00078.

62. Defendant Scottsdale Insurance Company had contractual and common law duties to the Rancifer Defendants including but not limited to: the duty to service their policy holders/customers, the duty to secure the Ranicfer Defendants a proper defense by properly trained, experienced, and licensed counsel, the duty to keep them reasonably informed of the status of the work on the claims against them and of any and all reservations of rights.

63. That, based upon the allegations herein, the Defendant Scottsdale is in complete and total breach of its duties to the Rancifer Defendants.

64. That, as a matter of law, said breach is the sole proximate cause of the Judgment against the Rancifer Defendants for a total of $5,000,000.00 in Cause No. 45D11-1108-PL-00078.

65. That the Rancifer Defendants may properly assign their rights for all causes of action to redress the aforesaid breaches to third parties such as the Krasinskis.

66. That the Indiana Declaratory Judgment Act allows for a declaration of the rights and duties of the parties.

WHEREFORE, plaintiffs pray for and request entry of Declaratory Judgment of the rights and duties under law of the parties plaintiff and defendant as to the propositions set forth in Paragraph 60 through 66 supra, and for all other relief just and proper in the premises.

COUNT II-BREACH OF CONTRACT

67. Plaintiff restates and incorporates by reference paragraph 1 through 66 above.

68. Defendant Scottsdale breached its contractual duties mentioned above, utterly and wholly and without excuse.

69. As a direct, proximate, foreseeable, and consequential result of said breach, Rancifer Defendants incurred liability in the amount of $5,000,000.00 plus statutory interest accruing at 8% per annum since February 25, 2015.

70. Rancifer Defendants are entitled to recover from Defendant Scottsdale the full amount of the Court's final judgment, plus all accrued interest, as consequential damages arising from Defendant Scottdale's breach of the policy of insurance.

71. Rancifer Defendants assigned to Plaintiff Krasinskis all contractual causes of action arising from the conduct set forth above.

WHEREFORE, the Krasinskis demand judgment, against Defendant Scottsdale, as assignee of the Rancifer Defendants, in the amount of $5,000,000.00, plus interest at 8% per annum, and other relief as is just and proper.

COUNT III-DEFENDANT SCOTTSDALE'S BAD FAITH BREACH OF CONTRACTUAL DUTY

72. Plaintiffs restate and reincorporate by reference Paragraphs 1 through 71 as though fully set forth herein.

73. Defendant Scottsdale owed its insureds a fiduciary duty in its handling of the Krasinskis claims against its insureds.

11

74. In the ordinary course of business, it is more likely than not that the ordinary, good faith handling of the Krasinskis claims against the Rancifer Defendants would have resulted in a settlement of their claims within the limits of the insurance policy covering such claims.

75. There was no reasonable basis for Defendant Scottsdale to refuse and utterly fail to carry out its duties to the Rancifer Defendants.

76. Defendant Scottsdale breached its duty of good faith and fair dealing owed to its Insureds including the duties to indemnify, negotiate and/or defend on their behalf.

77. Defendant Scottsdale further breached its fiduciary duties by putting, recklessly or intentionally, its own interests before those of its insureds with knowledge that such conduct was likely to result in a substantial liability in excess of limits of insurance.

78. The foregoing acts of Defendant Scottsdale were willful, wanton, reckless, and the result of malice, fraud, gross negligence and/or oppressiveness.

79. As a direct and proximate result of Defendant Scottsdale's bad faith and beach of its fiduciary duties, directly and through its representatives, the Rancifer Defendants have incurred liability in the amount of Five Million Dollars ($5,000,000.00), plus statutory interest accruing at 8% per annum since February 25, 2015.

80. Krasinskis, as assignee of the Rancifer Defendants, are entitled to recover from Defendant Scottsdale the full amount of the final judgment and all interest thereon as damages arising from Defendant Scottsdale's breach of its fiduciary duty and breach of its duty of good faith and fair dealing.

81. Krasinskis, as assignee of the Rancifer Defendants, are entitled to recover punitive damages, in an amount approximately determined by the trier of fact, to punish Defendant Scottsdale and to deter it from engaging in similar future conduct.

WHEREFORE, the plaintiffs, as assignee of the Rancifer Defendants, demand judgment against Defendant Scottsdale in the amount of $5,000,000.00, plus interest present at 8% per annum, and punitive damages in the maximum amount allowable by law.

COUNT IV·
NEGLIGENCE AND GROSS NEGLIGENCE OF DEFENDANT SCOTTSDALE

1·81. Plaintiff restates and incorporates by reference Paragraphs 1 through 81 as fully set forth here.

82. In discharging its duties pursuant to the policies of insurance, Defendant Scottsdale had a duty of care to conduct its duties reasonably and with care, skill and diligence.

83. Defendant Scottsdale, directly and through its agents and representations, breached such duties in one or more of the following ways:

      a.  Failing to properly investigate, adjust, manage, defend and negotiate claims against the Rancifer Defendants;

      b.  Failing to retain proper counsel as required by contract, policy, law and statute;

      c.  Failing to cause an Answer and other proper Court papers to be filed;

      d.  Failing to discharge an impliedly assumed duty to act as attorney for the Rancifer Defendants and

      e.  Otherwise breaching the duty of reasonable care.

84. As a result of the foregoing breaches, the Rancifer Defendants have become liable to the plaintiffs as outlined, supra.

85. Some or all of the foregoing breaches also constituted violations of applicable rules of statutes imposed by law.

86. Some or all of the foregoing acts were willfull, wanton, reckless and the result of malice, fraud, gross negligence and/or oppressiveness on the part of Defendant Scottsdale.

13

87. Plaintiffs, as assignees of the Rancifer Defendants rights, are entitled to recover from Scottsdale Defendants the full amount of the final judgment, plus punitive damages in an amount properly determined by the trier of fact.

WHEREFORE, the plaintiffs, as assignee of the Rancifer Defendants, demand judgment against Defendant Scottsdale in the amount of $5,000,000.00, plus interest present at 8% per annum, and punitive damages in the maximum amount allowable by law.

### RELIEF

WHEREFORE, Plaintiffs demand declaratory relief, compensatory damages, punitive damages and final judgment as requested above.

Respectfully Submitted,

Steven J. Sersic (#18151-45)
Kevin C. Smith (#18169-45)
SMITH SERSIC
9301 Calumet Ave, Suite 1F
Munster, IN 46321
(219) 933-7600

### JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.

Steven J. Sersic, (#18151-45)
Kevin C. Smith, (#18169-45)
SMITH SERSIC
9301 Calumet Avenue, Suite 1F
Munster, IN 46321
(219) 933-7600

FILED IN
CLERK'S OFFICE

STATE OF INDIANA 2015 FEB 17 PM 12 00    LAKE SUPERIOR COURT
)SS:                                     ROOM NUMBER SEVEN
COUNTY OF LAKE ) MICHAEL             CROWN POINT, INDIANA
CLERK LAKE SUPERIOR COURT

DALE KRASINSKI, TERESA KRASINSKI,          )
and ELEANOR KRASINSKI b/n/f DALE           )
KRASINSKI,                                 )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )     Cause No.: 45D11·1108·PL·00078
                                           )
DWAYNE RANCIFER, and                       )
RANCIFERS INVESTMENTS, LLC,                )
a/k/a RANCIFER INVESTMENTS, LLC,           )
                                           )
            Defendants.                    )

## JOINT AGREED PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

Come now Dale, Teresa, and Eleanor Krasinski, by counsel, Smith Sersic, and Dwayne

Rancifer Rancifers Investments, LLC a/k/a Rancifer Investments, LLC, by counsel, Jonathan D.

Petersen, and stipulate to the following Proposed Findings of Fact, Conclusions of Law, and

Judgment.

### A. PROPOSED FINDINGS OF FACT

The parties agree to the following proposed Findings of Fact:

Procedural Background

1.  Plaintiffs are citizens of the state of Indiana residing within Lake County.

2.  Plaintiff Eleanor Krasinski is a minor child, and brings the suit by her next friends, Dale
    Krasinski and Teresa Krasinski, her parents (hereinafter Referred to as "Teresa", "Dale",
    and "Eleanor").

3.  Defendant Dwayne Rancifer is a citizen of the state of Indiana residing within Lake County.

4.  He is the principal officer, member or manager of defendant Rancifers Investments, LLC
    a/k/a Rancifer Investments, LLC, a company organized under the laws of the state of Indiana
    having its principal place of business in the state of Indiana.

5.  Hereinafter, Dwayne Rancifer and the Rancifer corporate entities shall be collectively
    referred to as "Rancifer Defendants".

6.  In or around 2003, Teresa and Dale purchased real property, including the residence, located
    at 8805 Morse Place, Crown Point, Lake County, IN 46307.



EXHIBIT
A

MAR-26-2015  23:42          LC FELONY CLERK

7.    Rancifer Defendants operate a local property preservation company that was hired by
      Extreme Property Solutions, LLC, a midwest regional property preservation company, that
      was hired by MSI, a national property preservation company, which was hired by mortgage
      companies to service foreclosed properties, such as the Krasinskis, to properly secure the
      Krasinski residence in February 2011.

8.    At all times relevant hereto, the Rancifer Defendants maintained a commercial general
      liability policy, number CPS1212925 ("policy") issued by Scottsdale Insurance Company
      ("Scottsdale") to the Rancifer Defendants.

9.    The policy was in effect and applicable to claims made by Krasinskis against the Rancifer
      Defendants.

10.   On February 19, 2013, Krasinskis instituted legal proceedings in Lake County Superior
      Court against the Rancifer Defendants in the instant case at bar relative to certain actions of
      the Rancifer Defendants for their failure of legal duty with regard to their work at the 8805
      Morse property.

11.   The Rancifer Defendants received proper service of the lawsuit, and timely tendered a copy
      of the summons and complaint to Scottsdale's representatives.

12.   Scottsdale failed to timely respond to Krasinskis notices and communications regarding the
      litigation that was pending including information passed along to Scottsdale's adjuster such
      as the dates of depositions, court hearings, and the fact that a default had been filed against
      its insured.

13.   The enclosure letter of plaintiffs' counsel specifically directed that Scottsdale's representative
      forward the matter to Scottsdale's assigned defense counsel.

14.   Rancifer left it to Scottsdale and any Scottsdale-appointed adjusters, representatives, and
      attorneys to manage the defense of Rancifer in the lawsuit.

15.   Scottsdale was the actual and apparent agent of the Rancifer Defendants in the case at bar
      and the Rancifer Defendants are bound by its actions and failures to act herein.

16.   Unbeknownst to the Rancifer Defendants, Scottsdale and its appointed representatives
      failed to timely appear in the case, retain licensed Indiana primary or local counsel, file an
      answer to the complaint, or otherwise act to defend Rancifer Defendants, thereby subjecting
      its principal Rancifer to a default judgment in the case at bar.

17.   As a result of said failure to defend the lawsuit or answer the Complaint, the court entered
      an order of default judgment on October 9, 2014.

18.   The parties agree and the court finds that the actions of Scottsdale bind its principal,
      Rancifer Defendants, that the actions of Scottsdale justify default judgment absolutely as a
      matter of law, and that the default is properly entered and there is no meritorious basis
      whatsoever for vacating same.

19.   The court set the matter for a hearing on damages for November 24, 2014.

20.   Scottsdale has failed to secure counsel on behalf of Rancifer Defendants to appear at the
      damage hearing or participate in discovery regarding issues of damages, although Scottsdale
      and its representatives were or reasonably should have been aware of the same.

Substantive Facts

21.  On October 24, 2006 plaintiffs entered into a mortgage agreement whereby Litton Loan Servicing, LP (hereinafter "Litton Loan"), would finance plaintiffs' purchase of 8805 Morse in exchange for their repayment of the loan with interest.

22.  Litton subsequently foreclosed on the property.

23.  Litton Loan and/or their successors in interest, the other defendants in the case at bar, and the Rancifer Defendants entered into an agreement whereby the Rancifer Defendants would provide foreclosure cleanup operations and/or property preservation services at 8805 Morse.

24.  On or about February 22, 2011, the Rancifer Defendants negligently discharged their foreclosure clean-up operations and preservation services at 8805 Morse.

25.  Said negligent discharge of their foreclosure cleanup operations and preservation services at 8805 Morse included but was not limited to:

    a.  Negligently causing or allowing the doors to be kicked in;

    b.  Negligently causing or allowing the house and the surrounding property to become damaged;

    c.  Negligently failing to take reasonable precautions to safeguard the loss of personal property;

    d.  Negligently allowing personal property in the house and on the property to be left in a state of complete disarray, which it had not been previously;

    e.  Negligently allowing significant damage to the house;

    f.  Negligently causing the basement to flood.

26.  At the time of entry, Krasinskis still held lawful title to 8805 Morse, and noticeable "For Sale" signs were placed in conspicuous locations on that property.

27.  Accordingly, the Rancifer Defendants were negligent in failing to determine whether entry and performance of foreclosure cleanup operations and property preservation services were even called for, necessary, or appropriate at 8805 Morse.

28.  As part of and in addition to said previously listed negligent acts, the Rancifer Defendants' negligence caused interference with contractual and business relations of the Krasinskis with third parties, interference with prospective economic advantage of the Krasinskis, caused damage to the health and family relations of the Krasinskis, and negligently caused great damage to the reputation of the Krasinskis in the community.

29.  Entering the 8805 Morse property after February 22, 2011, the Krasinskis noted that items throughout the house were misplaced.

30.  Dale saw a hole in the wall in the back of the house with garbage all around it.

31.  The house was filled with an unpleasant stench.

32. Previous to February 22, 2011, the house had been kept in pristine condition because it had been listed for sale.

33. Based upon the interest in the home, the plaintiffs testified that they believed it was more likely than not it would have sold before the end of summer, 2011.

34. After February 22, 2011, in addition to the bad stench and disarray, there was water in the basement, condensation on the windows, mildew, mold, water throughout the home, cigarettes everywhere, and the carpet was dirty. See photographs in Plaintiff's Group Exhibit.

35. The home appeared as if it had been ransacked.

36. The basement of the home had flooded because the sump pump had been turned off.

37. Cigarettes had been put out on Dale and Teresa's four-year-old daughter Eleanor's chair that was in the shape of a mushroom.

38. Subsequent to February 22, 2011, Dale and Teresa were unable to sell the home because of the filthy, flooded, molded, and otherwise damaged condition of the home.

39. Although the Rancifer Defendants negligence occurred on or around February 22, 2011, it took Dale all of the summer of 2011 and beyond to make repairs to the house and clean it so that it was in a minimally salable condition.

40. By that time, putting house on the market was no longer feasible as the delay in sale created by the Rancifer Defendants foreclosed Dale and Teresa's window of opportunity to sell the house before relations with Litton disintegrated in late summer, 2011 making sale or renegotiation no longer feasible and requiring litigation to resolve the Krasinskis disputes with Litton Loan.

41. The negligence of the Rancifer Defendants caused a breakdown in the relations between Litton and the Krasinskis and a resultant three and a half year delay in the Krasinskis ability to repair their credit.

42. As a result, Dale and Teresa were not able to resolve their legal issues with Litton Loan until they were able to reach an agreement with Litton Loan at a mediation with mediator Steven Johnson on July 21, 2014.

43. As a result, Dale and Teresa underwent a 3 ½ year delay of their ability to rehabilitate their credit and so continue to have credit issues today because of the negligence of the Rancifer Defendants.

44. As a consequence of the negligence of the Rancifer Defendants, Dale and Teresa had to retain the law firm of Smith Sersic and currently owe legal fees in the approximate amount of $65,000 plus lawsuit expenses in the amount of $5,281.99.

45. As a consequence of the negligence of the Rancifer Defendants, Dale and Theresa sustained property losses in the amount of $65,975 because of property that was either damaged or lost due to said negligence.

46. As a result of the negligence of the Rancifer Defendants, the Krasinskis sustained damage to their reputation in the community because of their ruined credit and inaccurate portrayal as

bad debtors or deadbeats due to the financial hardship created by the Rancifer Defendants negligence.

47.   Moreover, Dale and Teresa Krasinski's relationship sustained strain and damage because of the additional financial pressure created by Rancifer Defendants' negligence.

48.   Subsequent to February 22, 2011, Teresa began to have physical symptoms such as dizziness, lightheadedness, heart palpitations, and irregular heartbeat.

49.   Subsequent to February 22, 2011, these symptoms escalated to such a point that she sought clinical attention with her physician Dr. Alan Jones.

50.   After examination by Dr. Jones, Dr. Jones determined that Teresa's symptoms were substantially caused and contributed to by physiological stress to her body and heart due to the Rancifer Defendants actions.

51.   Dr. Jones further concluded that the incidents involving the actions of the Rancifer Defendants, were a substantial cause of Teresa's need for a pacemaker, as well as a substantial cause of permanent cardiac damage in Teresa, of the need for lifetime cardiac monitoring, and of an increased risk for cardiac problems.

52.   Teresa's above symptoms, her treatment including the installation of the pacemaker and the future need for battery replacement surgery, and the other adverse medical consequences above, are proximately caused by the physiological stress to Teresa's body resulting from the negligence of the Rancifer Defendants.

53.   Teresa's pacemaker and condition have caused her to curtail her activities with her daughter as a mom.

54.   They have also has caused strain upon her relationship with Dale, anxiety and anguish over her past and present condition, as well as anxiety and anguish over the future need for a battery replacement surgery and her pacemaker.

55.   Teresa now has disability plates as a proximate result of her pacemaker and condition.

56.   Teresa's daughter, Eleanor, has suffered the loss of her mother's services and worries about her mom's health and pacemaker.

57.   The damages to Teresa due to her injuries, financial ruin, loss of enjoyment of life, strain on her relationship with her daughter and her husband, loss of personal property, and loss of reputation are fairly evaluated in the following range: $2,000,000 to $4,000,000.

58.   The damages to Eleanor for the loss of her mother's services, for the ruin of the reputation of her family, and for the strain on the relationship of the family of which is a member are properly evaluated in the following range: $500,000 to. $1,500,000.

59.   The damage to Dale for the ruin of his financial status, ruined reputation, lost services, relationship strain, loss of personal property and other general damages is fairly valued between $500,000 and $1,500,000.

## B. PROPOSED CONCLUSIONS OF LAW AND JUDGMENT

The parties agree to the following proposed Conclusions of Law:

MAR-26-2015  23:43        LC FELONY CLERK

60.   There is a proper default judgment in this matter entered against all the Rancifer Defendants.

61.   Said default judgment is proper and legal and should not be set aside.

62.   The matter is ripe for determination of damages and judgment against the Rancifer Defendants, jointly and severally.

63.   The negligence of the Rancifer Defendants, and each of them, have caused Teresa Krasinski damages in the amount of $3,000,000.

64.   The negligence of the Rancifer Defendants have caused Dale Krasinski damages in the amount of $1,000,000.

65.   The negligence of the Rancifer Defendants, and each of them, has caused Eleanor Krasinski damages in the amount of $1,000,000.

### C. PROPOSED JUDGMENT

The parties agree and stipulate judgment should be entered as follows:

1.   Judgment is entered in favor of the plaintiff Teresa Krasinski and against the Rancifer Defendants, jointly and severally, the amount of $3,000,000 (Three Million Dollars).

2.   Judgment is entered in favor of plaintiff Dale Krasinski and against the Rancifer Defendants, jointly and severally, in the amount of $1,000,000 (One Million Dollars).

3.   Judgment is entered in favor of the plaintiff Eleanor Krasinski and against the Rancifer Defendants, and each of them, in the amount of $1,000,000 (One Million Dollars).

Wherefore, the Krasinskis, by counsel, and the Rancifer Defendants, by counsel, hereby agree and stipulate to the above Joint Agreed Proposed Findings of Fact, Conclusions of Law, and Judgment.

Jonathan D. Petersen
Law Office of Jonathan Petersen
1544 45th Street #3
Munster, IN 46321
(219) 803-4550
Attorney for Rancifer Defendants

Kevin C. Smith, #18169-45
Steven J. Sersic, #18151-45
SMITH SERSIC
9301 Calumet Avenue, Suite 1F
Munster, IN 46321
(219) 933-7600
Attorney for Plaintiff



MICHAEL A. BROWN
Lake County Clerk
3711 Main Street
East Chicago, IN   46312

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7015 0640 0000 9918 1430

FIRST-CLASS

US POSTAGE $07.89⁰
AUG 07 2015
ZIP 46901
0801 1052844
DATA-PAC

Scottsdale Insurance Company
c/o Corporation Indemity Company
251 E. Ohio Street, Suite 500
Indianapolis, IN 46204-2184